United States District Court
Southern District of Texas
**ENTERED**
July 21, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MT. HAWLEY INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-20 2385 |
| JAMAL & KAMAL, INC. a/k/a | § | |
| JAMAL AND KAMAL, INC.; | § | |
| JHAH KS, LP; JHAH, LP; | § | |
| JHAH MO, LP; and JHAH | § | |
| PROPERTY HOLDINGS, LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mt. Hawley Insurance Company ("Plaintiff") seeks a declaration that there is no coverage for the insurance claim of Jamal & Kamal, Inc. ("J&K") and its associated companies (collectively, "Defendants").[1]   Pending before the court is Mt. Hawley's Motion for Judgment on the Pleadings and Brief in Support ("Plaintiff's MJP") (Docket Entry No. 17).   For the reasons explained below, Plaintiff's MJP will be granted.

### I.   Factual and Procedural Background

Plaintiff is an insurance company incorporated under Illinois law with its principal place of business in Illinois.[2]   Defendants

---

[1]Original Complaint for Declaratory Relief ("Complaint"), Docket Entry No. 1, p. 15 ¶ 26.   All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Id. at 1 ¶ 1.

operate IHOP restaurants across Kansas, Louisiana, Mississippi, Missouri, and Texas.[3]   Plaintiff issued a commercial property insurance policy (the "Policy") to J&K effective from November 1, 2019, to November 1, 2020.[4]

On March 17, 2020, J&K presented a claim to Plaintiff under the Policy for loss of business income associated with the COVID-19 pandemic (the "Claim").[5]   In support of the Claim with respect to three J&K restaurant locations in Texas, J&K advised Plaintiff that a state order prohibited dine-in service and only allowed carry-out orders effective March 16, 2020.[6]   These Texas restaurant locations initially remained open, but on March 22, 2020, J&K decided to close the Texas locations due in part to employees' fear of being infected by the virus.[7]   With respect to J&K's six Louisiana locations, J&K advised Plaintiff that the State of Louisiana prohibited dine-in service and only allowed carry-out orders effective March 13, 2020.[8]   By April 2, 2020, J&K had decided to

---

[3]Id. at 4 ¶ 11; Defendants' Original Answer ("Defendants' Answer"), Docket Entry No. 12, p. 2 ¶ 11.

[4]Complaint, Docket Entry No. 1, p. 3 ¶ 10; Defendants' Answer, Docket Entry No. 12, p. 2 ¶ 10.

[5]Complaint, Docket Entry No. 1, p. 4 ¶ 11; Defendants' Answer, Docket Entry No. 12, p. 2 ¶ 11.

[6]Complaint, Docket Entry No. 1, p. 4 ¶ 12; Defendants' Answer, Docket Entry No. 12, p. 2 ¶ 12.

[7]Id.

[8]Complaint, Docket Entry No. 1 p. 4 ¶ 13; Defendants' Answer, Docket Entry No. 12, p. 2 ¶ 13.

close all of its Louisiana locations.[9]  A representative of J&K
also advised Plaintiff that on March 9, 2020, state mandates were
issued in Kansas and Missouri prohibiting dine-in services and
permitting only carry-out orders.[10]  J&K advised Plaintiff that it
made a business decision to close all of its locations in Kansas
and Missouri on March 9, 2020.[11]  With respect to a scheduled
location to be opened in Mississippi, J&K advised Plaintiff that a
state order prohibited dine-in service and only allowed carry-out
orders effective March 17, 2020, and that J&K made a business
decision to close the Mississippi location on April 2, 2020.[12]

By letter dated May 14, 2020, Plaintiff informed J&K that
there was no coverage for the Claim.  J&K then retained legal
counsel who, by letter dated June 24, 2020, disagreed with
Plaintiff's coverage determination and stated that if Plaintiff did
not acknowledge coverage for the Claim, J&K would pursue any and
all remedies available.[13]

_____

[9]Id.

[10]Complaint, Docket Entry No. 1, pp. 4-5 ¶¶ 14; Defendants'
Answer, Docket Entry No. 12, p. 2 ¶ 14.

[11]Complaint, Docket Entry No. 1, p. 5 ¶ 14; Defendants'
Answer, Docket Entry No. 12, p. 2 ¶ 14.

[12]Complaint, Docket Entry No. 1, p. 5 ¶ 15; Defendants'
Answer, Docket Entry No. 12, p. 2 ¶ 15.

[13]Complaint, Docket Entry No. 1, p. 5 ¶ 17; Defendants'
Answer, Docket Entry No. 12, p. 2 ¶ 17.

Plaintiff filed the Complaint on July 7, 2020, seeking a declaration that coverage did not exist under the Policy.[14] Defendants filed their Answers on August 4, 2020, and September 20, 2020.[15] Plaintiff filed Plaintiff's MJP on January 29, 2021;[16] Defendants filed their response in opposition on February 19, 2021;[17] and Plaintiff filed a reply on February 26, 2021.[18]

## II.   Standard of Review

Federal Rule of Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." "The standard of review under Rule 12(c) is the same as that under Rule 12(b)(6) or 12(h)(2)." Hole v. Texas A&M University, Civil Action No. 04-CV-175, 2009 WL 8173385, at *2 (S.D. Tex. Feb. 10, 2009). "'[T]he central issue is whether . . . the complaint states a valid claim for relief.'" Hughes v. Tobacco Institute, Inc., 278 F.3d 417, 420 (5th Cir. 2001) (quoting St. Paul Mercury Insurance

---

[14]Complaint, Docket Entry No. 1, p. 15 ¶ 26.

[15]Defendants' Original Answer filed by Jamal & Kamal, Inc. a/k/a Jamal and Kamal, Inc., JHAH KS, LP, and JHAH, LP, Docket Entry No. 11; and Defendants' Answer filed by JHAH MO LP and JHAH Property Holdings, LLC, Docket Entry No. 12.

[16]Plaintiff's MJP, Docket Entry No. 17.

[17]Defendants' Objection & Response in Opposition to Mt. Hawley's Motion for Judgment on the Pleadings and Brief in Support ("Defendants' Response"), Docket Entry No. 18.

[18]Mt. Hawley's Reply in Support of Motion for Judgment on the Pleadings, Docket Entry No. 19.

Co. v. Williamson, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Hebert Abstract Company, Inc. v. Touchstone Properties, Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (per curiam) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1367 at 509-10 (3d ed. 1990)).

## III. Applicable Law

Under Texas law insurance policies are generally construed under the rules of contract construction. USAA Texas Lloyds Company v. Menchaca, 545 S.W.3d 479, 488 (Tex. 2018). Courts look to the language of the policy to determine the parties' intent, then examine the policy as a whole, try to harmonize and give effect to all provisions, and honor the parties' agreement as written. Crownover v. Mid-Continent Casualty Co., 772 F.3d 197, 202 (5th Cir. 2014) (citing Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London, 327 11 S.W.3d 118, 126 (Tex. 2010)). "Unless the policy dictates otherwise, [courts] give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." Nassar v. Liberty Mutual Fire Insurance Co., 508 S.W.3d 254, 258 (Tex. 2017) (quoting RSUI Indemnity Co. v. The Lynd Co.,

-5-

466 S.W.3d 113, 118 (Tex. 2015)).  Courts "enforce unambiguous policies as written." Pan Am Equities, Inc. v. Lexington Insurance Co., 959 F.3d 671, 674 (5th Cir. 2020).  "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and [courts] construe it as a matter of law." American Manufacturers Mutual Insurance Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003).

"If the laws of the states do not conflict, then no choice-of-law analysis is necessary." Jacked Up, L.L.C. v. Sara Lee Corp., 854 F.3d 797, 813 (5th Cir. 2017) (quoting Schneider National Transport v. Ford Motor Co., 280 F.3d 532, 536 (5th Cir. 2002)). In the absence of a conflict, federal courts apply the law of the forum state. See Schneider, 280 F.3d at 536 ("Thus, the law of the forum state, Texas, should apply here as there is no conflict . . . .").  In Louisiana as in Texas the words and phrases in an insurance policy are construed according to their plain, ordinary, and generally prevailing meaning. See American General Life Insurance Co. v. Whitaker, 416 F. Supp. 3d 608, 617 (E.D. La. 2019) (citing Cadwallader v. Allstate Insurance Co., 848 So. 2d 577, 580 (La. 2003)).  The same is true in Kansas, see Marshall v. Kansas Medical Mutual Insurance Co., 276 Kan. 97, 115 (Kan. 2003); Mississippi, see United States Fidelity and Guaranty Co. of Mississippi v. Martin, 998 So. 2d 956, 963 (Miss. 2008); and Missouri, see Dior v. American Family Mutual Insurance Co., 423 F. Supp. 3d 706, 710 (E.D. Mo., 2019).  Because the law concerning

-6-

interpretation of insurance policies is substantially the same in all these states, there is no conflict, and Texas law applies.

## IV.  <u>Analysis</u>

**A.   There Is No Business Income and Extra Expense Coverage**

Defendants seek coverage under the Policy's Business Income and Extra Expense provisions.[19]  The Policy provision on Business Income provides that Plaintiff "will pay for the actual loss of Business Income [sustained] due to the necessary 'suspension' of . . . 'operations' during the 'period of restoration'" only if (1) the suspension is "caused by direct physical loss of or damage to property" at the insured premises, and (2) the "direct physical loss of or damage to property" is "caused by or result[s] from a Covered Cause of Loss."[20]  Similarly, the Extra Expense coverage applies only to "necessary expenses . . . incur[red] during the 'period of restoration' that . . . would not have [been] incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."[21]

"The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state — for example, the car

_____

[19]Defendants' Response, Docket Entry No. 18, p. 5.

[20]Policy — Business Income (and Extra Expense) Coverage Form, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 35 ¶ A.1.

[21]<u>Id.</u> ¶ A.2.b.

was undamaged before the collision dented the bumper." <u>Trinity</u>
<u>Industries, Inc. v. Insurance Co. of North America</u>, 916 F.2d 267,
270-71 (5th Cir. 1990).

> The requirement that the loss be "physical," given the
> ordinary definition of that term is widely held to
> exclude alleged losses that are intangible or
> incorporeal, and, thereby, to preclude any claim against
> the property insurer when the insured merely suffers a
> detrimental economic impact unaccompanied by a distinct,
> demonstrable, physical alteration of the property.

<u>Hartford Insurance Co. of Midwest v. Mississippi Valley Gas Co.</u>,
181 F. App'x 465, 470 (5th Cir. 2006) (quoting 10A Couch on
Insurance § 148:46 (3d ed. 2005)).

Defendants argue that the term "physical loss" is ambiguous
because other courts have construed it as permitting coverage for
loss of business due to COVID-19.[22]  Defendants cite <u>Studio 417,</u>
<u>Inc. v. Cincinnati Insurance Co.,</u> 478 F. Supp. 3d 794, 801 (W.D.
Mo. 2020), for the proposition that "a physical loss may occur when
the property is uninhabitable or unusable for its intended
purpose."[23]  Defendants cite two other cases agreeing with the
reasoning of <u>Studio 417</u>,[24] but all of these cases are outliers.
"[D]istrict courts in Texas have consistently held that COVID-19

---

[22]Defendants' Response, Docket Entry No. 18, pp. 9-11.

[23]<u>Id.</u> at 10.

[24]<u>Id.</u> at 10-11.  Defendants cite <u>Wagner Shoes, LLC v. Auto-</u>
<u>Owners Insurance Co. and Owners Insurance Co.,</u> No. 20-cv-00465,
2020 WL 7260032 (N.D. Ala. Dec. 8, 2020), and <u>K.C. Hopps, Ltd. v.</u>
<u>Cincinnati Insurance Co.,</u> No. 20-cv-00437, 2020 WL 6483108 (W.D.
Mo. Aug. 12, 2020).

-8-

does not produce direct physical loss of or damage to property." <u>DZ Jewelry, LLC v. Certain Underwriters at Lloyds London</u>, Civil Action No. H-20-3606, 2021 WL 1232778, at *4 (S.D. Tex. March 12, 2021) (listing cases). Applying nearly identical policy language to an argument nearly identical to that of Defendants, the Western District of Texas held that it was unreasonable to construe a policy that covered "physical loss" as covering loss of business due to COVID-19 because doing so would ignore "the Policy's unambiguous requirement that there must be a 'direct physical loss of or damage <u>to property</u>' in order to trigger coverage." <u>Terry Black's Barbecue, LLC v. State Automobile Mutual Insurance Co.</u>, No. 1:20-CV-665-RP, 2021 WL 972878, at *5 n.14 (W.D. Tex. Jan. 21, 2021) (emphasis in original).

The court concludes that the term "physical loss" as used in the Policy is not ambiguous because courts throughout Texas have given it a "definite" and "certain" legal meaning. <u>See Schaefer</u>, 124 S.W.3d at 157. That meaning requires that covered property be physically lost or damaged before coverage can exist. Defendants do not allege that any of their property was physically lost or damaged. Instead, Defendants allege that they "suffer[ed] a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property[,]" which is not sufficient to establish that coverage for physical damage exists. <u>See Mississippi Valley Gas Co.</u>, 181 F. App'x at 470. The court

therefore concludes that Defendants have not stated a valid claim for Business Income or Extra Expense coverage.

**B.    There Is No Civil Authority Coverage**

Defendants argue that they are entitled to Civil Authority coverage because "governmental orders . . . prohibited access to [Defendants'] premises."[25]

The "Civil Authority Endorsement" provision of the Policy provides as follows:

> We will pay for the actual business income loss and necessary extra expense you incur due to the actual impairment of your Operations, directly caused by prohibition of access to your insured premises by a civil authority provided that both of the following apply:
>
> 1.   The actual impairment of your operations results from an order of a civil authority that specifically prohibits access to the insured premises; and
>
> 2.   The prohibition of access by a civil authority must be the direct result of physical loss or damage by a peril insured by this policy to property away from your insured premises or your dependent business, provided such property is within 1 mile from your insured premises or your dependent business.[26]

Courts interpreting Civil Authority provisions consistently hold that to "prohibit" access means to "formally forbid" or "prevent" access, and not merely to diminish or reduce business. See, e.g., Southern Hospitality, Inc. v. Zurich American Insurance

---

[25]Defendants' Response, Docket Entry No. 18, p. 9.

[26]Policy — Civil Authority Endorsement, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 124.

<u>Co.</u>, 393 F.3d 1137, 1140-41 (10th Cir. 2004) (holding that an FAA order grounding flights did not "prohibit" access to plaintiff's hotels); <u>Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP v. National Fire Insurance Co. of Hartford,</u> Civil Action No. 06-770-C, 2007 WL 2489711, at *6 (M.D. La. Aug. 29, 2007) ("'Prohibited,' . . . means more than mere hampering or limitation, it means to 'formally forbid' or 'prevent.'"); <u>see also Commstop, Inc. v. Travelers Indemnity Co. of Connecticut,</u> Civil Action No. 11-1257, 2012 WL 1883461, at *9 (W.D. La. May 17, 2012) (holding that to survive a motion for summary judgment on the issue of coverage under a "Civil Authority" provision, plaintiff was "required to put forward evidence showing access to its convenience store was totally and completely prevented — i.e., made impossible — by the road replacement program").

Defendants claim that state orders prohibited dine-in services, but admit that the state orders still allowed carry-out services.[27] Defendants' businesses remained open until Defendants decided to close them.[28] Because Defendants have failed to allege that any order formally forbade or prevented people from accessing their businesses, Civil Authority coverage does not exist under the Policy.

---

[27]Complaint, Docket Entry No. 1, pp. 4-5 ¶¶ 12 15; Defendants' Answer, Docket Entry No. 12, pp. 1-2 ¶¶ 12-15.

[28]<u>Id.</u>

-11-

Moreover, for Civil Authority coverage to apply, the Policy requires that the claimed damages be "the direct result of physical loss or damage by a peril insured by this policy" to property within one mile of the insured premises or the insured's dependent business.[29] For reasons set forth in Section IV.A, above, the court concludes that there is no allegation of "physical loss or damage" to any property at issue in this case. Absent a direct causal link between a civil order "prohibiting access" and some kind of "physical loss or damage," there can be no Civil Authority coverage. See South Texas Medical Clinics, P.A. v. CNA Financial Corp., Civil Action No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) (holding that Civil Authority coverage requires a "causal relationship between the civil authority order and the damage to other property"); Dickie Brennan & Co., Inc. v. Lexington Insurance Co., 636 F.3d 683, 685-86 (5th Cir. 2011) (denying coverage under a civil authority order that was not "due to direct physical loss of or damage to property"); Not Home Alone, Inc. v. Philadelphia Indemnity Insurance Co., Civil Action No. 1:10-CV-54, 2011 WL 13214381, at *7 (E.D. Tex. Mar. 30, 2011), report and recommendation adopted, Civil Action No. 1:10-CV-54, 2011 WL 13217067 (E.D. Tex. April 8, 2011) ("The civil authority action that prohibited access to NHA's Houston and Beaumont offices was not due to direct, preexisting physical loss of or damage to

---

[29]Policy — Civil Authority Endorsement, Exhibit 1 to Complaint, Docket Entry No. 1-1, p. 124.

property <u>other than at the described premises.</u>   Hence, there is no loss-of-business-income coverage under the Civil Authority provision . . . .").   The court concludes that Defendants have not stated a valid claim for Civil Authority coverage under the Policy.

### V.   <u>Conclusion and Order</u>

For the reasons explained above, the court concludes that Defendants have not made a valid claim for Business Income, Extra Expense, or Civil Authority coverage under the Policy. Accordingly, Mt. Hawley's Motion for Judgment on the Pleadings (Docket Entry No. 17) is **GRANTED**, and a Final Judgment will be entered granting Plaintiff declaratory relief.

**SIGNED** at Houston, Texas, on this the 21st day of July, 2021.


_____
                SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE